[No. 12500–5–II.   Division Two.   July 10, 1990.]

WESTERN WASHINGTON UNIVERSITY, *Appellant,* v. THE WASHINGTON FEDERATION OF STATE EMPLOYEES, ET AL, *Respondents.*

434

*Kenneth O. Eikenberry, Attorney General,* and *Wendy K. Bohlke, Assistant,* for appellant.

*Edward E. Younglove III* and *Swanson Parr Cordes Younglove Peeples & Wyckoff,* for respondent State Employees.

*Kenneth O. Eikenberry, Attorney General,* and *Sally G. Brown, Assistant,* for respondent State.

ALEXANDER, C.J.—Appellant, the Board of Trustees of Western Washington University, appeals a declaratory ruling of the Higher Education Personnel Board that a proposed plan by the University to contract out police services, currently provided by a campus police force, violates the HEP Board's rules regarding layoffs as well as a collective bargaining agreement between the University and the Washington Federation of State Employees. We affirm.

On July 7, 1988, the Board of Trustees of Western Washington University passed resolution 88–02. This resolution directed the University's administration to enter into a "cooperative agreement" with the City of Bellingham whereby that City would provide police services to the University. The resolution further directed the administration to abolish the existing campus police force and to decommission its officers.

Under the plan ultimately developed by the University, 8 of the 11 University police officers were to be decommissioned and reassigned to security duties. The three least senior officers were given notice that their employment would be terminated "for lack of work."

The Washington Federation of State Employees petitioned the Higher Education Personnel Board for a declaratory ruling that the University's proposed contracting out of police services violated WAC 251–10–030, the HEP

Board's rule regarding layoffs, and a collective bargaining agreement between the University and the Federation.

The HEP Board reviewed the University's proposed action and found that: (1) the actions of the University were not due to a lack of funds; (2) the work transferred by the agreement to the City of Bellingham was work previously performed by the University's campus police; and (3) that four of the campus police positions affected by the agreement between the University and the City of Bellingham are included in "Bargaining Unit B" of the Collective Bargaining Agreement between the Board of Trustees of the University and the Federation, which agreement provides, in pertinent part:

> The employer shall not contract or sub–contract work typically performed by Unit "B" personnel except where such action will not reduce hours of work for Unit "B" employees and/or there are not Unit "B" personnel on the layoff list(s) for the class of work to be contracted. Any such contracting shall be limited to peak load requirements and shall not be used to avoid adding personnel to fill positions which could become permanent.

Based on these findings, the HEP Board concluded that the proposed contracting out of police services violated the University's collective bargaining agreement with the Federation with regard to the four positions covered by the agreement; and that, as to all of the officers, the University's proposed action violated the State Higher Education Personnel Law and the HEP Board's rules regarding layoffs.

The University sought review of the HEP Board's declaratory ruling in Thurston County Superior Court pursuant to former RCW 34.04.080.[1] In its petition, the University alleged that the ruling of the HEP Board: (1) exceeded the statutory authority of the agency; (2) was

---

[1]Pending the decision of the HEP Board, the Federation also filed a complaint for declaratory judgment and injunction seeking to enjoin the University from implementing the proposed contract with the City of Bellingham and the contemporaneous layoffs of campus police. This action was consolidated with the University's petition for review of the declaratory ruling.

clearly erroneous; and (3) was in derogation of the University's statutory authority to enter into interlocal cooperation agreements. Following a review of the record made before the HEP Board, the Superior Court entered an order and judgment affirming the Board's ruling.

I

STATUTORY AUTHORITY OF THE UNIVERSITY

The University first asserts that the HEP Board's ruling is in derogation of the University's authority to: (1) establish police services on the campus of Western Washington University; and/or (2) enter into interlocal cooperative agreements with local governments for the provision of services. We disagree.

A declaratory ruling of a state agency, which includes state boards (*see* former RCW 34.04.010(1)), is subject to review in the same manner as provided for review of decisions in contested cases. Former RCW 34.04.080. Accordingly, pursuant to former RCW 34.04.130(6)(b), the Higher Education Personnel Board's ruling may be reversed if it is in excess of the statutory authority or jurisdiction of the agency.[2]

A. Statutory Authority To Establish Police Force.

The University first contends that under RCW. 28B.10-.550[3] it has exclusive jurisdiction over the establishment of a campus police force and, therefore, the HEP Board may not exercise its authority in a manner that conflicts with the University's authority in such matters. In essence, the University's argument is a contention that the Legislature,

---

[2]The administrative procedure act, RCW 34.04, was amended by Laws of 1988, ch. 288, codified at RCW 34.05. The amended APA applies to all agency proceedings begun on or after July 1, 1989. RCW 34.05.902.

[3]RCW 28B.10.550 provides, in pertinent part:
"The boards of regents of state universities and the boards of trustees of the regional universities . . . acting independently and each on behalf of its own institution:
"(1) May each establish a police force for its own institution, which force shall *function under such conditions and regulations as the board prescribes*; . . .."

by granting the University power to establish a police force under RCW 28B.10.550, intended to exempt such civil service employees from the protection of the State Higher Education Personnel Law.

The University's argument expressly contradicts the provisions of RCW 28B.16.030, which state that the State Higher Education Personnel Law shall apply:

> to all personnel of the institutions of higher education and related boards except those exempted under the provisions of RCW 28B.16.040.

University police officers are not listed as exempt personnel under RCW 28B.16.040.[4]

In *Cunningham v. Community College Dist. 3*, 79 Wn.2d 793, 489 P.2d 891 (1971), the Supreme Court relied on the above statute in rejecting a contention by Olympic College that its food service employees were not subject to the State Higher Education Personnel Law. In *Cunningham*, Olympic College sought to terminate the employment of certain civil service employees in its food service facilities and to contract with an independent contractor for the provision of food services. *Cunningham*, 79 Wn.2d at 794. The College asserted that it had a basic "management control" right to contract for services based upon RCW 28B-.50.140 which, similar to the provision relied upon by the University in the present case, empowered the College to establish food service facilities. *Cunningham*, 79 Wn.2d at 793.

The College in *Cunningham*, like the University in the present case, argued that the legislative grant of power to establish food services superseded the State Higher Education Personnel Law and, thus, that such civil service

---

[4]RCW 28B.16.040 lists as exempt personnel the members of the governing board of each institution, all presidents, vice–presidents, etc.; student, part–time, or temporary employees and part–time professional consultants; the director, his confidential secretary, assistant directors, and professional education employees of the state board for community college education; the personnel director of the Higher Education Personnel Board and his confidential secretary; and various other classifications specified by the governing board of each institution.

employees were not entitled to the protection of the State Higher Education Personnel Law. *Cunningham,* 79 Wn.2d at 803. The court rejected the contention and affirmed an order of the Higher Education Personnel Board ordering reinstatement of the employees, concluding that:

> If the legislature intended the Community College Act to authorize, what is in effect an exemption of food service employees from the protection of the act [State Higher Education Personnel Law], it would have manifested its intention either by further amendment to the Community College Act or by insertion of an additional exemption in the State Higher Education Personnel Law. . . .

*Cunningham,* 79 Wn.2d at 803–04.[5]

■ We find the holding of *Cunningham* dispositive on this issue. Clearly, if the Legislature had intended to exempt campus police officers from the protection of the civil service laws by virtue of the mere grant of authority to such institutions to establish a police force, it would have indicated such intent either in the authorizing statute, RCW 28B.10.550, or by listing police officers as exempt personnel under RCW 28B.16.040. It did neither and, thus, we conclude that the University's power to establish a police force pursuant to RCW 28B.10.550 is subject to the State Higher Education Personnel Law. Accordingly, police officers employed by the University pursuant to such authority may only be laid off and discharged in accordance with the procedures established by such law.

B. Statutory Authority To Enter Into Interlocal Agreements.

Notwithstanding the applicability of the State Higher Education Personnel Law, the University further contends that it has unrestricted authority to enter into interlocal

---

[5]*See also Washington Fed'n of State Employees v. Spokane Comm'ty College,* 90 Wn.2d 698, 585 P.2d 474 (1978). In *Spokane Comm'ty College,* the court rejected an argument that the power granted the purchasing director for the Department of General Administration, under RCW 43.19.190 (authorizing the purchase of all services for maintenance of all state institutions, colleges and community colleges), authorized contracts in derogation of the HEP Laws. *Spokane Comm'ty College,* 90 Wn.2d at 701.

cooperation agreements with other local governmental bodies by virtue of the Interlocal Cooperation Act, RCW 39.34. Accordingly, the University argues that the State Higher Education Personnel Law cannot be applied in derogation of its authority to enter into such agreements with the City of Bellingham.

The University's argument ignores the plain language of RCW 39.34.030(5), which provides, in pertinent part, that:

> No agreement made pursuant to this chapter shall relieve any public agency of any obligation or responsibility imposed upon it by law . . ..

In light of the above provision it seems clear that the University's power to enter into interlocal cooperation agreements is expressly subject to the University's obligations and responsibilities under the State Higher Education Personnel Law.

## II
### ERROR OF LAW

The University's final contention is that the HEP Board erred in concluding that the proposed contracting out of police services to the City of Bellingham violated the State Higher Education Personnel Law regarding layoffs.[6]

---

[6]As a procedural matter, the Federation notes that the University characterized its challenge in this regard as a challenge to the HEP Board's ruling as being "clearly erroneous." A challenge to an agency's decision as "clearly erroneous" challenges the agency's factual determinations. See *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 324–25, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). The Federation asserts that the University should be barred from seeking review of issues of law insofar as the University has failed to challenge the HEP Board's ruling under former RCW 34.04.130(6)(d) as affected by other error of law. An appeal from a final judgment of the superior court under the APA is to be made in the manner provided by law for appeals from the superior court in other civil cases and, thus, is governed by the Rules of Appellate Procedure. Former RCW 34.04.140; *see also Independent Ins. Agents & Brokers v. Herrmann*, 79 Wn.2d 462, 467, 486 P.2d 1068 (1971). We find the issue as raised in the University's brief in this regard to sufficiently raise the alleged error for purposes of our review. *See* RAP 10.3(g).

Pursuant to RCW 28B.16.100, the HEP Board promulgated WAC 251–10–030. This regulation purports to govern layoffs and provides, in pertinent part:

> (1) An appointing authority may layoff or reduce the number of working hours or the work year of an employee without prejudice *because of* lack of funds or *lack of work.*

(Italics ours.) WAC 251–10–030(1). The University contends that the HEP Board erred in concluding that there was not a "lack of work" which justified the layoff of the employees pursuant to WAC 251–10–030.

▮ Alleged errors of law are reviewed under former RCW 34.04.130(6)(d) of the administrative procedure act. Pursuant to that provision, a reviewing court may substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d at 317, 325, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

With regard to the University's reason for terminating the employment of its police officers, the HEP Board found that the work was merely being transferred to the City of Bellingham. This finding has not been challenged. Based on the finding the HEP Board concluded that the University's decision to "abolish" the campus police force did not result from a "lack of work" because such work was not being discontinued.

▮ In *Cunningham,* Olympic College asserted, in addition to its contention that its food service employees were not subject to the State Higher Education Personnel Law, that the "contracting out" of such services resulted in a curtailment of work, thus justifying the layoff of such employees under then existing WAC 251–10–030. *Cunningham,* 79 Wn.2d at 801. The court rejected this contention as well, stating as follows:

> This alternative condition precedent to layoff, of curtailment of work, cannot be established by merely showing that the employer has determined, for whatever reason, to have the

work accomplished by others. Such interpretation of the board's rule would render any limitation upon an employer's right to remove an employee (whether by discharge, layoff, or by any other means) meaningless, completely thwarting the purposes for a civil service system. . . .

*Cunningham,* 79 Wn.2d at 801–02; *see also Washington Fed'n of State Employees v. Spokane Comm'ty College,* 90 Wn.2d 698, 585 P.2d 474 (1978). Based on *Cunningham,* the HEP Board concluded that a "lack of work," for purposes of layoffs under WAC 251–10–030, cannot be justified on the basis that the claimed work shortage is occasioned by the contracting out of such work to others. We agree.

The University contends, however, that the *Cunningham* holding has been supplanted by the subsequent enactment of RCW 28B.16.240, which provides, in pertinent part:

Nothing contained in this chapter shall prohibit any institution of higher education . . . from purchasing services by contract with *individuals or business entities* if such services were regularly purchased by valid contract at such institution prior to April 23, 1979; *Provided,* That no such contract may be executed or renewed if it would have the effect of terminating classified employees or classified employee positions existing at the time of the execution or renewal of the contract.

(Italics ours.) It argues that because the Legislature referred solely to "individuals or businesses" in the above statute, that the contracting out of civil service positions to other governmental entities is not prohibited.

█ Rather than defining the scope of the rule enunciated in *Cunningham,* we construe RCW 28B.16.240 as merely setting forth a limited exception to the holding of *Cunningham.* Accordingly, we do not read RCW 28B.16.240 as embodying a legislative intent to exclude governmental recipients of such contracts from the general prohibition against the contracting out of civil service positions.

█ Furthermore, as noted in *Cunningham* the policy and purpose of the State Higher Education Personnel Law is to establish a system of personnel administration based on merit principles and scientific method. *See* RCW 28B-.16.010. As stated therein, the discharge or layoff of an employee because the work performed by that employee

has been contracted out, is based upon neither merit principles nor scientific methods. *Cunningham,* 79 Wn.2d at 802. We fail to see how the policy and purpose of the State Higher Education Personnel Law is any less offended where such civil service positions are contracted out to another governmental agency.[7]

Affirmed.

PETRICH and WORSWICK, JJ., concur.

After modification, further reconsideration denied July 26, 1990.

---

[7]We further note that the University has failed to challenge the HEP Board's alternative conclusion that the University's proposed action violates the collective bargaining agreement between the University and the Federation. Accordingly, even if we were to conclude that the HEP Board erred in ruling as it did, we would affirm the HEP Board on the alternative conclusion that such contracting out was barred by the collective bargaining agreement.